UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————x

BRUCE A. BLAKEMAN, in his capacity as
County Executive of the County of Nassau,
COUNTY OF NASSAU, MARC MULLEN as
parent and natural guardian of K.E.M., an infant
under the age of eighteen years, and JEANINE
MULLEN, as parent and natural guardian
of K.E.M., an infant under the age of eighteen years,

               Plaintiffs,

     -against-

LETITIA JAMES, as Attorney General of the
State of New York, STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL, and
STATE OF NEW YORK,

————————————————————————x
               Defendants.

Case No.   _____-cv-2024

**COMPLAINT**

Plaintiffs County of Nassau, Bruce A. Blakeman, in his capacity as County Executive of the County of Nassau, Marc and Jeanine Mullen, as parents and natural guardians of K.E.M., an infant under the age of eighteen years, as and for their Complaint against the Defendants Attorney General Letitia James, State of New York Office of the Attorney General, and State of New York, hereby allege as follows upon information and belief:

## INTRODUCTION

1.    By this action, the Plaintiffs seek to prevent the Defendants from doing exactly what it is that they have alleged the County of Nassau and County Executive Bruce A. Blakeman have done: unconstitutionally discriminating against individuals on the basis of gender in the limited and narrow context of sporting events.

2.    Acknowledging the legitimate governmental interest of protecting women and girls from unfair competition and potential injury, County Executive Blakeman signed Executive Order

2-2024 on February 22, 2024.  That Executive Order ensures that only biological females play in girls' and women's sporting events and that only biological males play in boys', men's, or coed sporting events held at Nassau County facilities.  To be clear, the Executive Order does not impose a blanket prohibition on transgender individuals from participating in sporting events held at Nassau County facilities.  In fact, the Executive Order invites transgender biological males to compete except in teams and leagues that advertise or identify as exclusively all-girls or all-women.

3.     As her response, on March 1, 2024 Attorney General Letitia James issued a "cease and desist" letter that threatened "further legal action" if the Executive Order was not rescinded within five business days.

4.     But, as publicly reported, the County Executive emphasized in his response to the Attorney General's letter that "biological males who are transgender would have other opportunities to compete, they would not be foreclosed from sports competitions in Nassau County because it would be the wrong thing to do."[1]

## THE PARTIES

5.     Plaintiff County of Nassau is a municipal corporation duly existing under the laws of the State of New York.

6.     Plaintiff Bruce A. Blakeman is the duly elected County Executive for the County of Nassau.

7.     Plaintiff Marc Mullen is a natural individual who resides in the County of Nassau. He is the father of a 16-year-old biological female high school volleyball player.

---

[1] *Nassau County exec says trans bill fights for female athletes – slams Letitia James for accusing him of 'discrimination,'* N.Y. Post, March 1, 2024, https://nypost.com/2024/03/01/us-news/nassau-county-exec-says-trans-bill-fights-for-female-athletes-slams-letitia-james/?utm_campaign=iphone_nyp&utm_source=mail_app (last accessed March 3, 2023).

8.    Plaintiff Jeanine Mullen is a natural individual who resides in the County of Nassau. She is the mother of the same 16-year-old biological female high school volleyball player.

9.    Defendant Attorney General Letitia James is the attorney general of the State of New York.

10.   Defendant New York State Office of the Attorney General is a department within New York State government that coordinates statewide civil and criminal investigations.

11.   Defendant State of New York is a duly existing state within the United States of America.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the causes of action alleged herein arise under the Constitution and laws of the United States.

13.   Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of New York, namely the signing of Executive Order 2-2024.

14.   This Court can enter a declaratory judgement and provide preliminary and permanent injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65, and 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

**A.    County Executive Bruce A. Blakeman Issues Executive Order 2-2024 in Order to Promote Fairness and Equity in Girls' and Women's Sports**

15.   Recognizing that an unfair playing field is created when a biological male competes against biological females, and further recognizing the risk of serious injury to biological females, County Executive Bruce A. Blakeman issued Executive Order 2-2024 on February 22, 2024.

16.    After setting forth a number of recitals, the Executive Order provides, in pertinent part, that it is:

> **ORDERED**, that any sports, leagues, organizations, teams, programs, or sports entities must expressly designate as one of the following based on the biological sex at birth of the team members/participants when applying for a use and occupancy  permit to utilize Nassau County Parks property for the purposes of organizing a sporting event or competition:
> 1) Males, men, or boys; or
> 2) Females, women, or girls; or
> 3) Coed or mixed, including both males and females.

17.    The Executive Order further directs that it is:

> **ORDERED**, that Nassau County Department of Parks, Recreation & Museums shall not issue any permits for the use and occupancy of Nassau County Park's property for the purposes of organizing a sporting event or competition that allows athletic teams or sports designate for females, women, or girls to include biological males; and it is further
>
> **ORDERED**, that Nassau County Department of Parks, Recreation & Museums may issue permits for the use and occupancy of Nassau County Park's property for the purposes of organizing a sporting event or competition that allow athletic teams or sports for males, men, or boys to include biological females.

18.    Finally, the Executive Order defines an individual's gender "as the individual's biological sex at birth; and a statement of a team member's/participant's biological sex on the team member's/participant's official birth certificate is considered to have correctly stated the team member's/participant's biological sex at birth if the statement was filed at or near the time of the team member's/participant's birth".

19.    To date, no permits have been withheld or denied as a result of the implementation of the Executive Order.

**B.**     **Defendant Letitia James Issues a Cease-and-Desist Letter in Response to the Executive Order.**

20.     Nevertheless, on March 1, 2022, Defendant Letitia James, through the Chief of the Civil Rights Bureau of Defendant New York State Office of the Attorney General, issued to the County of Nassau and Bruce A. Blakeman a cease-and-desist letter.

21.     From the outset of the letter, the Office of the Attorney General incorrectly states that the Executive Order is "in clear violation of New York State anti-discrimination laws. . . ." As a result of its unilateral finding, the Office of the Attorney General "demand[ed] that [the Executive Order] be immediately rescinded."

22.     Relying upon New York State Human Rights Law, the Office of the Attorney General opined that the Executive Order "force[s] sports leagues to make an impossible choice: discriminate against transgender women and girls, in violation of New York law, or find somewhere else to play."

23.     The Office of the Attorney General additionally demanded that County Executive Blakeman "immediately produce any and all documents constituting the record supporting your decision to issue the Order."  That particular demand came with the threat of "further legal action" upon non-compliance.

**C.**     **Objective Evidence Supports the Reasoning to Issue the Executive Order.**

24.     Preliminarily, it is undeniable that men have received more recognition in sports and have been afforded vastly greater opportunities to participate in sports, especially in the world of professional sports.  Biological girls and women worked tirelessly to differentiate themselves and gain recognition as female athletes.  Female sports have made tremendous progress since the 1920's, when the International Women's Sports Federation was founded.  As a result of these measures, female participation in sports, both at the recreational and professional levels, has

experienced exponential growth.  If biological men are allowed to compete with biological females, it erases all the hard-earned progress and – more importantly – creates a unsafe and dangerous environment for those biological females to play in.  Historically, women and girls receive "fewer athletic opportunities, scholarships, and funds."[2]

25.     The fact remains that the Executive Order lawfully levels the playing field and ensures safe and equal opportunities for biological girls and women to participate in the same way and numbers historically enjoyed by their male counterpoints.  This is not mere rhetoric, but is rooted in actual examples of transgender girls having injured biological girls during sporting events.  For instance, just last month it was reported that a girls basketball team went so far as to forfeit a game because a transgender girl (i.e. biological male) injured three girls and the coach felt compelled to terminate his team's participation in order to prevent further injury to the biologically female athletes by the 6-foot-tall biologically male transgender player.[3]

26.     Similarly, in November, 2022, news outlets reported that a female high school volleyball player was injured by a transgender female during a volleyball match.  The injured student suffered a concussion and neck injury after the transgender female spiked the volleyball which, in turn, struck the female student in the face.[4]

---

[2] *How are Females Discriminated Against in Sporting Activities*, GOAL FIVE, Jan. 25, 2022, https://goalfive.com/blogs/news/discrimination-against-women-in-sports (last accessed March 4, 2024).

[3] *High school basketball game is abandoned after trans player 'injures three female opponents' with shocking video showing the biological male hurling an athlete to the floor,* DAILY MAIL, February 20, 2024, https://www.dailymail.co.uk/news/article-13105605/Trans-basketball-high-school-game-injury-forfeit-Massachusetts.html (last accessed on March 3, 2024).

[4] *Injured N.C. volleyball player in spotlight as lawmakers push transgender athlete ban*, NEWS CHANNEL 9 ABC, April 21, 2023, https://newschannel9.com/news/local/injured-nc-volleyball-player-in-spotlight-as-lawmakers-push-transgender-athlete-ban-north-carolina-cherokee-county-sports-headlines-payton-mcnabb-hiwassee-dam-high-school-highlands-high-school (last accessed on March 4, 2024).

27.     The damages sustained by the volleyball player were not limited to physical injuries alone.  That student described her experiences with anxiety and depression following the injuries. In testimony offered to the North Carolina legislature, the student noted that "[a]llowing biological males to compete against biological females is dangerous.  I may be the first to come before you…but I won't be the last."[5]

28.     Thus, the threats described are not conjecture or speculation, but are concrete, realistic examples of what has happened across the Nation when transgender girls compete against and with biological girls.

29.     Nor should any of this come as a surprise.  Biologically, it is undeniable that males and females are different.  Even transgender males and transgender females are unable to alter their DNA post-transition.  Additionally, bone density, bone mass, bone structure, and length differ in male and females.  These are innate differences that do not disappear after altering hormones or genitalia. These inherent differences are what make it dangerous for transgender females to compete against and with biological females.  In short, by ensuring equality in women's athletics, Plaintiff County of Nassau is advancing an important governmental interest.

30.     It is for this reason that Marc Mullen and Jeanine Mullen join this action as parents and natural guardians of their daughter.  As the Defendant Letitia James would have it, the Mullens are being forced into making the impossible determination whether to expose their 16-year-old daughter to the risk of injury by a transgender girl or simply to not play volleyball at all and forego whatever opportunities may present because of her participation in volleyball.  Certainly, the Mullen's daughter – an unmistakable member of a long-established protected class – should not

---

[5] *Female volleyball player testifies to physical, mental trauma since injury by trans athlete*, NATIONAL REVIEW, April 20, 2023,  https://www.nationalreview.com/news/female-volleyball-player-testifies-to-physical-mental-trauma-since-injury-by-trans-athlete/

be penalized because of the State's policy preferences which, as alleged herein, run contrary to established Federal law.

31.     There are countless other examples of the unfairness associated with transgender women being permitted to compete against biological females.  Perhaps most noteworthy is the story of Lia Thomas, a transgender woman who shattered swimming records at UPenn after having participated with the men's team prior to commencing hormone therapy.[6]  Despite Lia Thomas' successes since transitioning to a transgender female, even some teammates noted that Thomas held an "unfair advantage over competition."[7]  Those teammates noted that "when it comes to sports competition, [] the biology of sex is a separate issue from someone's gender identity. Biologically, Lia holds an unfair advantage over competition in the women's category, as evidenced by her rankings that have bounced from #462 as a male to #1 as a female."[8]

32.     There also remains the issue of transgender females using the same locker rooms as biological females.  Swimmer Riley Gaines acknowledged the "extreme discomfort" she experienced while in the locker room with a transgender female.[9]  In this regard, the women's advocacy group Stand With Women issued a statement regarding locker room usage by transgender women:

---

[6] *How an Ivy League swimmer became the face of the debate on transgender women in sports*, CNN, March 22, 2022, https://www.cnn.com/2022/02/22/us/lia-thomas-transgender-swimmer-ivy-league/index.html (last accessed March 4, 2024).

[7] *16 UPenn swimmers ask school not to challenge transgender policy that could block teammate Lia Thomas from* competing, CNN, February 4, 2022, https://www.cnn.com/2022/02/04/us/lia-thomas-ncaa-transgender-policy-letter/index.html (last accessed on March 4, 2024).

[8] *Id.*

[9] '*Horrendous': Outrage as swimmer left in tears over locker room incident with transgender star*, FOX SPORTS, February 3, 2023, https://www.foxsports.com.au/more-sports/horrendous-outrage-as-swimmer-left-in-tears-over-transgender-locker-room/news-story/df574f1e87482560168bc9e4d41c5712 (last accessed March 5, 2024).

"No one within the NCAA is willing to acknowledge us, our feelings, our safety, our privacy. I feel like it's really only happened in the last couple weeks where I get emotional talking about the locker room scene because it is just so wild that you can turn around and see a 6'4'' biological man pull his pants down watching you undress. And no one is willing to stick up for you?"[10]

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

33.     Plaintiffs repeat and re-allege each of the foregoing allegations set forth in paragraphs 1 through 32, inclusive, as though more fully and completely set forth here.

34.     28 U.S.C. 2201 expressly provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

35.     Under the Fourteenth Amendment to the Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.

36.     Without question, biological girls and women – including Plaintiff Marc Mullen and Jeanine Mullen's 16-year-old daughter – are members of a long-recognized protected class for purposes of a Fourteenth Amendment Equal Protection analysis in contrast to transgender males and females who have, upon information and belief, never been recognized as a protected class.

37.     The Executive Order does not categorically ban transgender females from participation in sports at County facilities.

38.     The Defendants' collective reliance on and application of the New York State Human Rights Law as against the Executive Order runs afoul of the Constitutional guarantee of equal protection of the laws because the Defendants' position effectively vitiates biological

---

[10] *Id.*

females' right to equal opportunities in athletics as well as the right to a safe playing field by exposing biological females to the risk of injury by transgender women (i.e. biological males) as well as unfair competitive advantage.

39.     Moreover, the Defendants' attempts to prevent enforcement of Executive Order 2-2024 frustrates and interferes with the County's important governmental objectives of ensuring biological girls' and women's equality in sports.  *See, e.g. Clark v. Ariz. Interscholastic Assoc.*, 695 F.2d 1126, 1131 (9th Cir. 1982) (holding that there is "no question" that redressing past discrimination against women in athletics is a "legitimate and important governmental interest."); *see also O'Connor v. Bd. of Educ.*, 449 U.S. 1301, 1307, 101 S. Ct. 72, 75 (1980) ("Without a gender-based classification in competitive contact sports, there would be a substantial risk that boys would dominate the girls' programs and deny them an equal opportunity to compete in interscholastic events.") (Stevens, J.).  The Defendants may be of the view that the County is powerless to regulate athletics at its facilities; the Constitution says otherwise.

40.     The Defendants' reliance upon and application of the New York Human Rights Law violates the Fourteenth Amendment to the Constitution.  As applied in the narrow scope of this case, the Human Rights Law is unconstitutional because it elevates transgender women to a level not recognized by Federal law in the athletics context all to the detriment of biological girls and women, which are federally recognized.

41.     In fact, the cease-and-desist order violates the constitutional rights of biologically girls and women who are a federally recognized protected class.  Transgender individuals are not a protected class under federal law. Therefore, the rights of a federally protected class, i.e., biological girls and women, cannot be abridged by state law.

42.     The executive order merely sets forth a well-established and long-standing classification permitted under federal law. Title IX, cite Soule.

43.     Consequently, the Plaintiffs respectfully request that this Court enjoin enforcement of the Human Rights Law against Executive Order 2-2024 and declare the Executive Order to be lawful.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment (1) declaring that the Defendants' application of the New York Human Rights Law in the context of Executive Order 2-2024 violates the Equal Protection Clause of the Fourteenth Amendment, (2) declaring that Executive Order 2-2024 is valid under the United States Constitution, Federal law, and state law, (3) permanently enjoying the Defendants from taking any action to prevent the County of Nassau and County Executive Bruce A. Blakeman from implementing and enforcing Executive Order 2-2024, and (4) providing such further and different relief as this Court deems just and proper including costs, disbursements, and reasonable attorney fees.

Dated:  Mineola, New York
         March 5, 2024


BERKMAN, HENOCH, PETERSON,          JOHN L. HILLER
& PEDDY, P.C.                       Chief Deputy County Attorney


By:    /s/ Joseph E. Macy           By: /s/ Matthew M. Rozea
       Joseph E. Macy                   Matthew M. Rozea
       *Attorneys for Plaintiffs Marc and*     Victoria LaGreca
       *Jeanine Mullen*                  Sheharyar Ali
       100 Garden City Plaza             Thomas P. Montefinese
       Garden City, New York 11530       *Deputy County Attorneys*
       (516) 222-6200                    1 West Street, 2nd Floor
                                         Mineola, New York 11501
                                         (516) 571-3056